Central York School District, Petitioner *v.* Commonwealth of Pennsylvania, Department of Education, Respondent.

Argued February 9, 1979, before Judges ROGERS, BLATT and DISALLE, sitting as a panel of three.

*Michael W. King,* with him *Henry B. Leader,* and *Stock and Leader,* for petitioner.

*Allen Warshaw* and *John A. Alzamora,* with them *Ernest N. Helling,* Assistant Attorney General, and *Patricia A. Donovan,* Deputy Attorney General, Chief Counsel, for respondent.

*William Fearen, Michael I. Levin,* and *Cleckner & Fearen,* for amicus curiae, Pennsylvania School Boards Association.

OPINION BY JUDGE ROGERS, March 26, 1979:

The Central York School District has appealed an order of the Secretary of Education requiring the School District to provide a special education program

for an exceptional student, Holly H. Holleran, who happens to deviate from average in mental characteristics in that she is gifted.

Holly's parents requested a program placement conference and due process hearing pursuant to Department of Education regulations at 22 Pa. Code §§13.31-13.33 to question the assignment of their daughter to a regular fifth grade class for the 1976-77 school year. Following the hearing, at which the parents presented unchallenged evidence that Holly was a gifted student, the Hearing Officer recommended that Holly should be educated in a program appropriate for the mentally gifted. On appeal, the Secretary of Education dismissed the School District's exceptions to the Hearing Officer's report, adopted his recommendations and ordered the School District to provide Holly with special education.

The School District does not dispute the fact that Holly is gifted; it argues that its duty to provide a special education program for gifted students is contingent upon the Commonwealth's obligation to reimburse the School District for the cost of the program and that since the School District had what it believed was accurate advice from the Department of Education that reimbursement would not be forthcoming, it was not obliged to accommodate Holly. We firmly disagree with this thesis and will affirm the order of the Secretary of Education.

"[A] school district is a creature or agency of the Legislature . . . whose sole purpose is the administration of the system of public education under the direction of the Legislature." *Chartiers Valley Joint Schools v. Allegheny County Board of School Directors,* 418 Pa. 520, 544, 211 A.2d 487, 500 (1965). Section 1371 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §13-1371, imposes a duty on district superintendents to identify all ex-

ceptional children and defines exceptional children as "children of school age who deviate from average in physical, mental, emotional or social characteristics to such an extent that they require special education facilities or services. . . ." Gifted and talented students are included within this definition. 22 Pa. Code §13.1. Section 1372 of the Code, 24 P.S. §13-1372, imposes on school districts the primary duty to prepare and to submit to the Secretary of Education for approval, plans for the proper education and training of all exceptional children and to provide and maintain special classes or schools in accordance with the approved plan. *See also* 22 Pa. Code §§13.6, 13.11(b), 171.13.

During the 1975-76 school year, the Central York District Superintendent implemented a screening program to identify gifted students, developed a program of education for gifted students pursuant to regulations at 22 Pa. Code §§13.21 and 13.22, and proposed additions to the School District's budget to cover expense of the program. By letter dated November 15, 1976 the Assistant Special Education Director of the Lincoln Intermediate Unit informed the school districts within the Intermediate Unit that on instructions of the Department of Education "programs for the Gifted that would be operated by the local school districts would not be funded under the district's Special Education Budgets." The Central York School Board interpreted this sentence as a declaration that no reimbursement would be had from the State and for this reason provided no money and no program for the gifted during the school year 1976-77.

The obligation of the Commonwealth to reimburse school districts for costs of special education is found at Section 1373 of the Code, 24 P.S. §13-1373:

School districts maintaining special classes in the public schools or special public schools or

providing special education, as specified in this subdivision of this article, shall receive reimbursement, as provided by this act, so long as such classes, such schools, and such special education are approved by the Department of Public Instruction as to location, constitution and size of classes, conditions of admission and discharge of pupils, equipment, courses of study, methods of instruction and qualification of teachers.

We agree with the Secretary of Education that this provision does not make State reimbursement a condition precedent to the duty of school districts to provide special education for exceptional students required by Section 1372. To the contrary, we believe that the School District's duty set forth in Section 1372 to establish an educational program for the gifted is mandatory and a condition to its right to receive reimbursement from the Commonwealth. Section 2509 of the Code, 24 P.S. §25-2509, which describes the procedure for obtaining State reimbursement, requires school districts to submit annual estimates of the costs of their reimbursable programs for prior review and approval by the Department of Education. If approved amounts of reimbursement are established, they are paid to the respective Districts during the year of the operation of the programs. The Central York School District submitted no cost estimates for Department approval and obtained no Department approval of classes, facilities, teachers and course of instruction as required by Section 1373 of the Code, and it operated no program for gifted children. We agree with Judge NEWCOMER's conclusion drawn after an extensive analysis of the sections of the Code pertinent to this matter, that:

The District's duty to provide appropriate educational services in accordance with a plan, and

the Superintendent's duty to enforce that obligation, are not contingent upon the Legislature's full funding of reimbursable costs or upon the Superintendent's approval of the District's budget request.

*Frederick L. v. Thomas,* 419 F. Supp. 960, 974 (E.D. Pa. 1976), *aff'd,* 557 F.2d 373 (3rd Cir. 1977).

The School District is not without remedy to obtain reimbursement for an approved program of special education for gifted children. In *Rose Tree Media School District v. Department of Public Instruction,* 431 Pa. 233, 237, 244 A.2d 754, 755-56 (1968), Justice COHEN wrote concerning similar provisions for reimbursement for pupil transportation costs:

> It is clear from reading these statutory requirements that once the department *has approved the amount* of reimbursable transportation costs, there is no discretion left to the department in arriving at the actual amount which must be paid to the school district. *After approval,* the department is mandated by the statute to remit an amount which is to be determined by applying the mechanical formula. . . . The application of that formula does not involve any discretion but merely involves the ministerial duty of making the proper computations in accordance with the directives of the statute. In the event that the Department *approves* the expenses incurred, its failure to pay the amount required by the formula is a proper subject for an action of mandamus. (Emphasis added.) Order affirmed.

### ORDER

AND Now, this 26th day of March, 1979, the order of the Secretary of Education, dated November 3, 1977, is affirmed.